Copyright 2023 – 2026 – John Walter Worthington

FILED
U.S. District Court
District of Kansas
09/25/2026
Clerk, U.S. District Court
By: JRK Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

John Walter Worthington,

Plaintiff,

v. Case No: 5:26-cv-4100-DDC-RES

CITY OF KINCAID, KANSAS, et al.,

Defendants.

JURY TRIAL DEMANDED
DESIGNATION OF PLACE OF TRIAL: Topeka, Kansas

PRELIMINARY STATEMENT

**1.** This is a civil-rights action under 42 U.S.C. § 1983 arising from municipal and law-enforcement conduct in Anderson County, Kansas, including the City of Kincaid's alleged knowing tolerance of an improperly licensed alcohol establishment operating as an on-premise bar-style premises, and Anderson County law-enforcement defendants' alleged treatment of Plaintiff's reports, warnings, requests for assistance, and protected petitioning activity.

**2.** Plaintiff alleges that Cricket's Bar & Grill possessed only off-premise authority, or otherwise lacked proper on-premise authority, but knowingly served beer and/or cereal malt beverage for on-premise consumption.

**3.** Plaintiff further alleges that the City of Kincaid, through its City Council and final municipal policymakers, knew of this condition from the beginning and allowed it to continue through Kincaid Days, where a large brawl occurred at or near the same establishment.

Copyright 2023 – 2026 – John Walter Worthington

**4.** Plaintiff also alleges that Anderson County law-enforcement officials and sheriff-office personnel had notice of escalating danger, Plaintiff's reports, and Plaintiff's protected efforts to petition government for assistance, but treated Plaintiff differently from similarly situated aggressors, threat-makers, brawlers, and reporting parties.

**5.** Plaintiff brings federal constitutional claims for deprivation of bodily integrity under the Fourteenth Amendment, state-created danger, Equal Protection/selective enforcement, First Amendment retaliation and petition interference, Monell municipal liability, supervisory liability, declaratory relief, injunctive relief, and related relief as set forth below.

**6.** Plaintiff does not ask this Court to enforce Kansas alcohol law as a freestanding state-law enforcement action. Plaintiff alleges that the Kansas licensing violations are relevant facts showing knowledge, foreseeability, municipal policymaker action, deliberate indifference, and creation or increase of danger for purposes of Plaintiff's federal civil-rights claims.

CAPACITIES AND DEFENDANTS

**7.** Plaintiff brings this action under 42 U.S.C. § 1983 against the governmental entities, individual governmental actors, and private defendants identified in this section.

**8.** The Defendants in this action are City of Kincaid, Kansas; Anderson County, Kansas; Vernon Valentine, individually, as former Sheriff of Anderson County, Kansas; Wesley E. McClain a/k/a Wes McClain, individually for actions and omissions taken as then-Undersheriff of Anderson County, Kansas, and in his official capacity as current Sheriff of Anderson County, Kansas for prospective declaratory and injunctive relief only; Deputy Thompson, first name presently unknown, individually; Unknown Officers 1–3, individually; Cricket's Bar & Grill, legal owner/operator presently unknown; the presently unknown owner, operator, corporate entity, limited-liability company, registered agent, license holder, manager, or responsible person/entity for Cricket's Bar & Grill; and John Does 1–20.

Copyright 2023 – 2026 – John Walter Worthington

**9.** Defendant City of Kincaid, Kansas is sued as a municipal entity under 42 U.S.C. § 1983 for actions, customs, practices, final-policymaker decisions, ratification, and deliberate indifference attributable to the City, including conduct of the City Council and other final municipal policymakers.

**10.** Defendant Anderson County, Kansas is sued as a municipal entity under 42 U.S.C. § 1983 for sheriff-office policies, customs, practices, final-policymaker decisions, ratification, training failures, supervision failures, dispatch-related practices, report-handling practices, evidence-preservation practices, and deliberate indifference attributable to Anderson County.

**11.** Plaintiff does not sue the municipal defendants under a respondeat-superior theory. Plaintiff alleges municipal liability only where the constitutional injury was caused by municipal policy, custom, practice, final-policymaker action, ratification, or deliberate indifference.

**12.** Defendant Vernon Valentine is sued in his individual capacity for damages based on his own alleged conduct, supervisory conduct, policy role, ratification, deliberate indifference, failure to train, failure to supervise, failure to correct known unconstitutional practices, and final-policymaker involvement while serving as Sheriff of Anderson County, Kansas.

**13.** Plaintiff does not sue Vernon Valentine merely because he formerly held the title of Sheriff. Plaintiff sues Valentine only for his own personal involvement, policy responsibility, supervisory conduct, ratification, deliberate indifference, or conduct that caused or contributed to the constitutional violations alleged in this Complaint.

**14.** Defendant Wesley E. McClain a/k/a Wes McClain is sued in his individual capacity for damages based on his own alleged conduct, supervisory conduct, operational role, policy role, ratification, deliberate indifference, failure to train, failure to supervise, failure to

Copyright 2023 – 2026 – John Walter Worthington

correct known unconstitutional practices, and personal involvement while serving as Undersheriff of Anderson County, Kansas under then-Sheriff Vernon Valentine.

**15.** Plaintiff does not sue Wesley E. McClain merely because he held the title of Undersheriff. Plaintiff sues McClain individually only for his own personal involvement, knowledge, actions, omissions, supervisory conduct, policy participation, ratification, deliberate indifference, or conduct that caused or contributed to the constitutional violations alleged in this Complaint.

**16.** Defendant Wesley E. McClain a/k/a Wes McClain is also sued in his official capacity as the current Sheriff of Anderson County, Kansas for prospective declaratory and injunctive relief only.

**17.** Plaintiff does not seek duplicative damages against Wesley E. McClain in his official capacity. The official-capacity claim against McClain is included only to obtain prospective relief directed at ongoing or recurring sheriff-office policies, customs, practices, reporting restrictions, dispatch practices, records practices, evidence-preservation practices, retaliation-related practices, selective-enforcement practices, and access-to-law-enforcement issues.

**18.** Defendant Deputy Thompson, first name presently unknown, is sued in his individual capacity for damages based on his own alleged conduct, including personal participation, actual notice of escalating danger, failure to act after warning, selective treatment, retaliation, failure to document, failure to preserve, failure to intervene, or other conduct alleged below.

**19.** Unknown Officers 1–3 are sued in their individual capacities for damages. Plaintiff presently does not know their true names but alleges that each participated in, responded to, documented, failed to document, mischaracterized, failed to preserve, failed to intervene in, ratified, or otherwise contributed to the events and constitutional violations alleged in this Complaint.

Copyright 2023 – 2026 – John Walter Worthington

**20.** Plaintiff will seek leave to amend this Complaint to substitute the true names of Unknown Officers 1–3 when their identities are learned through public records, dispatch records, CAD logs, body-camera records, sheriff-office records, KORA responses, Rule 26 disclosures, subpoenas, or discovery, as permitted by the Federal Rules of Civil Procedure or Court order.

**21.** Defendant Cricket's Bar & Grill is sued as a private business entity, owner/operator, premises operator, alcohol-premises operator, and/or legal entity responsible for the operation of the establishment located in Kincaid, Kansas.

**22.** Plaintiff presently does not know the exact legal name of the owner, operator, corporate entity, limited-liability company, registered agent, license holder, manager, or other responsible person or entity for Cricket's Bar & Grill. Plaintiff will seek leave to amend this Complaint when those identities are confirmed through Kansas ABC records, city licensing records, Kansas Secretary of State records, KORA responses, subpoenas, or discovery, as permitted by the Federal Rules of Civil Procedure or Court order.

**23.** Plaintiff alleges federal § 1983 claims against private defendants only to the extent facts show joint action, conspiracy, willful participation with governmental actors, state action, or other conduct sufficient to treat the private defendants as acting under color of state law.

**24.** To the extent supplemental state-law claims are pled below against private defendants, Plaintiff alleges those claims arise from the same facts, events, premises, licensing condition, Kincaid Days brawl, injuries, damages, and common nucleus of operative fact alleged in this Complaint.

**25.** Plaintiff reserves the right to seek leave to amend capacities, parties, official titles, legal entity names, and service information as additional facts become known through public records, KORA responses, disclosures, subpoenas, or discovery.

Copyright 2023 – 2026 – John Walter Worthington

**JURISDICTION, VENUE, AND TIMELINESS**

**26.** This Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

**27.** This Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks relief for the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

**28.** To the extent supplemental state-law claims are pled below, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 because those claims arise from the same events, premises, licensing condition, Kincaid Days brawl, law-enforcement conduct, injuries, damages, and common nucleus of operative fact as Plaintiff's federal claims.

**29.** Venue is proper in the United States District Court for the District of Kansas because the events giving rise to Plaintiff's claims occurred in Kansas, the municipal defendants are Kansas governmental entities, and the individual governmental defendants acted under color of Kansas law in Anderson County, Kansas.

**30.** Venue is also proper because a substantial part of the events or omissions giving rise to the claims occurred in Anderson County, Kansas, including events involving Cricket's Bar & Grill, Kincaid Days, the City of Kincaid, Anderson County law-enforcement personnel, and sheriff-office practices.

**31.** Plaintiff designates Topeka, Kansas as the place of trial.

Copyright 2023 – 2026 – John Walter Worthington

**32.** Plaintiff's claims are timely because the events alleged occurred within the applicable limitations period and/or involve related continuing conduct, policies, customs, practices, ratification, injuries, and ongoing or prospective relief issues.

**33.** Plaintiff does not plead continuing conduct to revive claims that are legally time-barred. Plaintiff pleads continuing and related conduct to show policy, custom, knowledge, deliberate indifference, ratification, causation, damages, and the need for prospective relief.

**34.** Plaintiff's federal civil-rights claims are independent of any Kansas Tort Claims Act notice requirement. To the extent Plaintiff later asserts Kansas tort claims against a municipality or municipal employee, Plaintiff reserves those claims subject to compliance with K.S.A. 12-105b(d), amendment, supplemental pleading, or other procedure allowed by law.

**RESERVATION CONCERNING POTENTIAL KTCA CLAIMS — K.S.A. 12-105b(d)**

**35.** Plaintiff's primary claims in this Complaint are federal civil-rights claims under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

**36.** Plaintiff does not intend this Complaint to prematurely commence any unexhausted Kansas Tort Claims Act claim against a Kansas municipality, municipal entity, municipal employee, or governmental employee if K.S.A. 12-105b(d) notice has not yet been satisfied as to that claim.

**37.** To the extent Plaintiff later asserts Kansas Tort Claims Act claims against the City of Kincaid, Anderson County, municipal employees, county employees, sheriff-office personnel, or other governmental actors, Plaintiff reserves the right to do so only after compliance with applicable notice requirements, denial, deemed denial, amendment, supplemental pleading, or other procedure allowed by law.

Copyright 2023 – 2026 – John Walter Worthington

**38.** Plaintiff includes facts concerning Kansas alcohol licensing, municipal knowledge, City Council conduct, CMB license status, on-premise service, nuisance conditions, law-enforcement conduct, report handling, dispatch practices, record preservation, and sheriff-office conduct because those facts support Plaintiff's federal claims by showing knowledge, foreseeability, deliberate indifference, state action, Monell policy or custom, final-policymaker action, ratification, causation, damages, and the need for prospective relief.

**39.** Plaintiff does not ask this Court, through this section, to enforce Kansas alcohol law as a freestanding state-law enforcement action.

**40.** This section is not pled as a standalone cause of action.

**<u>FACTUAL ALLEGATIONS</u>**

**A**. Cricket's Bar & Grill and the City of Kincaid Licensing Issue

**41.** Cricket's Bar & Grill operated in Kincaid, Anderson County, Kansas.

**42.** Cricket's Bar & Grill was located within the municipal boundaries of the City of Kincaid, Kansas.

**43.** Plaintiff possesses Kansas licensing records showing that Cricket's Bar & Grill was authorized for off-premise sales only, or otherwise lacked proper on-premise authority for the sale or service of beer, cereal malt beverage, draught beer, alcohol on tap, or alcoholic beverages for consumption on the premises.

**44.** The Kansas licensing records are material because they show that Cricket's Bar & Grill did not have lawful authority to operate as an on-premise bar-style alcohol establishment.

Copyright 2023 – 2026 – John Walter Worthington

**45.** Despite the off-premise-only licensing status, Cricket's Bar & Grill allegedly operated in substance as an on-premise alcohol premises where patrons consumed beer, cereal malt beverage, draught beer, alcohol on tap, or alcoholic beverages on site.

**46.** Cricket's Bar & Grill operated in substance as a bar-style premises where patrons consumed beer and/or cereal malt beverage on site.

**47.** The difference between off-premise authority and on-premise alcohol service was material because on-premise alcohol service changes the nature of the premises, the risk environment, the crowd conditions, and the foreseeable public-safety concerns.

**48.** Plaintiff alleges that Cricket's Bar & Grill and its responsible owner, operator, manager, license holder, or controlling person knew or should have known the contents and limits of its own license.

**49.** Plaintiff alleges that Cricket's Bar & Grill's owner, operator, manager, license holder, or controlling person knew or should have known that an off-premise-only license did not authorize on-premise bar-style service, alcohol on tap, draught service, or on-premise consumption.

**50.** Plaintiff alleges that Cricket's Bar & Grill and its responsible owner, operator, manager, license holder, or controlling person knew that Cricket's Bar & Grill was not lawfully authorized to sell or serve alcohol, beer, draught beer, alcohol on tap, or cereal malt beverage for on-premise consumption without the proper on-premise license or other legally required authority.

**51.** The City of Kincaid, through its City Council and final municipal policymakers, knew from the beginning that Cricket's Bar & Grill was serving beer and/or cereal malt beverage for on-premise consumption despite lacking proper on-premise authority.

Copyright 2023 – 2026 – John Walter Worthington

**52.** The City's knowledge was not speculative. The on-premise service was open, visible, known in the community, and known to members of the City Council and/or municipal officials.

**53.** Plaintiff alleges that the City of Kincaid, through its City Council and final municipal policymakers, knew or should have known the contents and limits of Cricket's Bar & Grill's licensing status because the City had authority, responsibility, records, practical control, or municipal involvement concerning local licensing, approval, renewal, verification, reporting, or response to alcohol-related operations within the City.

**54.** Plaintiff alleges that the City Council's actual or constructive knowledge is further supported by the small size of the City of Kincaid, the open and visible nature of Cricket's Bar & Grill's on-premise operations, the public-facing nature of the business, the public nature of alcohol service on tap, and the fact that Kincaid Days occurred in the same small community where the improper operation was visible and known.

**55.** Plaintiff alleges that Kincaid is a very small community, with a population of approximately 100 persons, and that Cricket's Bar & Grill's on-premise alcohol operations were not hidden, isolated, or unknown to the community.

**56.** Plaintiff alleges that in a community of that size, open alcohol service on tap and on-premise consumption at a public-facing business was plainly visible, publicly known, and known to City Council members or final municipal policymakers.

**57.** Upon information and belief, the City of Kincaid had authority, responsibility, or practical control concerning local licensing, approval, renewal, verification, reporting, and municipal response to Cricket's Bar & Grill's alcohol-related operations.

**58.** The City of Kincaid did not require Cricket's Bar & Grill to stop the on-premise service.

Copyright 2023 – 2026 – John Walter Worthington

**59.** The City of Kincaid did not require Cricket's Bar & Grill to obtain proper on-premise authority before continuing bar-style operations.

**60.** The City of Kincaid did not suspend, revoke, condition, refer, report, or otherwise correct the known improper licensing condition.

**61.** The City of Kincaid allowed Cricket's Bar & Grill to continue operating in substance as an on-premise alcohol establishment.

**62.** Plaintiff alleges that the City's failure to correct, report, condition, suspend, revoke, refer, or otherwise address the improper on-premise alcohol operation was not a mere technical oversight. Plaintiff alleges that it reflected actual knowledge, deliberate indifference, ratification, concealment, or conscious disregard of the foreseeable public-safety risks created by allowing an improperly licensed alcohol-premises environment to continue operating.

**63.** Plaintiff alleges that the City's concealment, silence, non-enforcement, and tolerance helped create the false public appearance that Cricket's Bar & Grill was lawfully authorized to operate as an on-premise bar-style establishment.

**64.** By allowing the condition to continue, the City of Kincaid created, continued, ratified, concealed, and increased a foreseeable danger associated with an improperly licensed alcohol premises.

**65.** The foreseeable danger included intoxication-related disturbances, fights, threats, assaults, crowd escalation, public disorder, and injury to persons present at or near the premises.

Copyright 2023 – 2026 – John Walter Worthington

**66.** The risk was especially foreseeable during public events, including Kincaid Days, when crowds, alcohol consumption, late-night activity, and public-safety concerns were heightened.

**B. Kincaid Days and the Bar Brawl**

**67.** During Kincaid Days, a large brawl occurred at or near Cricket's Bar & Grill.

**68.** The brawl involved numerous persons.

**69.** The brawl occurred in the same environment that the City of Kincaid had allowed to exist despite knowing that Cricket's Bar & Grill was operating as an on-premise bar-style premises without proper on-premise authority.

**70.** Plaintiff was present during or in connection with the Kincaid Days events.

**71.** Before the brawl occurred, Plaintiff observed escalating behavior and believed the situation was becoming dangerous.

**72.** Deputy Thompson was on site during the Kincaid Days events.

**73.** Former Sheriff Vernon Valentine was also on site during the Kincaid Days events.

**74.** Before the brawl occurred, Plaintiff spoke with Deputy Thompson.

**75.** Plaintiff told Deputy Thompson that, based on the way people were acting, Plaintiff did not believe the situation was going to end well and believed violence was foreseeable.

**76.** Plaintiff's warning placed Deputy Thompson on actual notice that the danger was specific, immediate, and escalating.

Copyright 2023 – 2026 – John Walter Worthington

**77.** Because former Sheriff Vernon Valentine was on site that night, Plaintiff alleges that Valentine also had actual or constructive notice of the crowd conditions, alcohol-premises environment, escalating risk, law-enforcement response posture, and foreseeable danger.

**78.** Plaintiff's warning was not a vague complaint. It concerned a specific public event, a specific crowd environment, a specific alcohol-premises setting, and a specific risk of imminent violence.

**79.** Despite Plaintiff's warning and despite Valentine's and Thompson's presence on site, law-enforcement personnel failed to take reasonable action to prevent or reduce the known danger.

**80.** Law-enforcement personnel failed to adequately separate escalating persons, control the scene, document Plaintiff's warning, increase law-enforcement response, warn others, intervene meaningfully, or otherwise reduce the known risk.

**81.** A large brawl then occurred at or near Cricket's Bar & Grill.

**C. Anderson County Law-Enforcement Response and Treatment of Plaintiff**

**82.** Anderson County law-enforcement personnel responded to, documented, failed to document, investigated, failed to investigate, or otherwise became involved in events connected to the Kincaid Days brawl.

**83.** Plaintiff later reported the incident and provided a witness list to Deputy Panky.

**84.** Plaintiff also spoke with Deputy Thompson regarding the incident on separate dates.

Copyright 2023 – 2026 – John Walter Worthington

**85.** Plaintiff provided information showing that there were numerous participants and witnesses connected to the Kincaid Days brawl.

**86.** Upon information and belief, Anderson County law-enforcement personnel had access to dispatch records, CAD records, witness information, deputy observations, reports, body-camera recordings, dash-camera recordings, and other records concerning the brawl.

**87.** Plaintiff alleges that Anderson County law-enforcement personnel failed to treat Plaintiff as a reporting victim, witness, or person seeking protection.

**88.** Instead, Plaintiff was treated differently from similarly situated aggressors, threat-makers, brawlers, and other persons involved in or connected to the same events.

**89.** Plaintiff alleges that known aggressors, threat-makers, brawlers, or similarly situated persons were not subjected to comparable investigation, documentation, enforcement, or consequences.

**90.** Plaintiff alleges that this unequal treatment lacked a rational basis and was motivated by hostility, animus, retaliation, deliberate indifference, or a custom of treating Plaintiff as the problem because he repeatedly sought law-enforcement assistance and government redress.

**D. Ronnie Quick Threat After the Brawl**

**91.** After the brawl, Plaintiff was approached by Ronnie Quick.

**92.** Ronnie Quick threatened to follow Plaintiff home and beat him.

**93.** This threat occurred shortly after the Kincaid Days brawl.

Copyright 2023 – 2026 – John Walter Worthington

**94.** Plaintiff reported threats and public-safety concerns connected to the same overall environment.

**95.** Plaintiff alleges that law-enforcement personnel failed to meaningfully respond to, document, investigate, or act upon Plaintiff's reports in a manner comparable to how similarly situated persons would have been treated.

**E. Pattern of Reporting, Petitioning, and Differential Treatment**

**96.** Plaintiff repeatedly reported threats, violence, unsafe conditions, public-safety issues, and criminal conduct in Anderson County.

**97.** Plaintiff's reports, warnings, requests for assistance, requests for records, and complaints to government officials were protected petitioning activity under the First Amendment.

**98.** Anderson County law-enforcement personnel knew Plaintiff was engaging in this protected activity.

**99.** Plaintiff alleges that Anderson County law-enforcement personnel discouraged, chilled, mischaracterized, ignored, minimized, or retaliated against Plaintiff because of his repeated reports and protected petitioning activity.

**100.** Plaintiff alleges that Anderson County law-enforcement personnel failed to properly document Plaintiff's reports, failed to preserve evidence, failed to treat Plaintiff equally, and failed to respond to Plaintiff's public-safety concerns in a non-retaliatory manner.

**101.** Plaintiff alleges that the unequal and retaliatory treatment became a pattern rather than an isolated event.

**F. Supervisory and Policymaker Conduct**

Copyright 2023 – 2026 – John Walter Worthington

**102.** At relevant times, Vernon Valentine served as Sheriff of Anderson County, Kansas.

**103.** At relevant times, Wesley E. McClain a/k/a Wes McClain served as Undersheriff of Anderson County, Kansas under then-Sheriff Vernon Valentine.

**104.** Valentine and McClain had supervisory, operational, policy, training, discipline, reporting, evidence-preservation, and law-enforcement practice responsibilities.

**105.** Valentine and McClain knew or should have known of recurring problems involving Plaintiff's reports, warnings, law-enforcement access, differential treatment, evidence preservation, and sheriff-office response practices.

**106.** Valentine and McClain failed to correct, supervise, train, discipline, investigate, preserve, or stop the unconstitutional practices alleged herein.

**107.** Their failure to act was not mere negligence. Plaintiff alleges it reflected deliberate indifference, ratification, and conscious disregard of Plaintiff's federal rights.

**108.** Anderson County, through its sheriff-office policies, customs, practices, final policymakers, supervisors, deputies, dispatch coordination, and ratification, caused or contributed to Plaintiff's injuries.

**G. Ongoing Need for Prospective Relief**

**109.** Wesley E. McClain is now the current Sheriff of Anderson County, Kansas.

**110.** Plaintiff alleges that ongoing or recurring sheriff-office policies, customs, practices, reporting restrictions, dispatch practices, evidence-preservation practices, retaliation-related

Copyright 2023 – 2026 – John Walter Worthington

practices, selective-enforcement practices, and access-to-law-enforcement issues remain relevant to prospective relief.

**111.** Plaintiff seeks prospective declaratory and injunctive relief to prevent ongoing or recurring denial of equal treatment, retaliation, evidence loss, reporting restrictions, and interference with lawful access to emergency and non-emergency law-enforcement channels.

**112.** Plaintiff does not seek prospective relief to control ordinary law-enforcement discretion. Plaintiff seeks narrowly tailored relief to prevent unconstitutional retaliation, unequal treatment, chilling of protected reporting activity, and recurrence of the policies and practices alleged herein.

## CLAIMS FOR RELIEF

### COUNT I 42 U.S.C. § 1983 — Fourteenth Amendment State-Created Danger / Bodily Integrity

**Against Defendant City of Kincaid, Kansas**

**113.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**114.** This count is brought under 42 U.S.C. § 1983 for violation of Plaintiff's substantive due-process right to bodily integrity under the Fourteenth Amendment.

**115.** Defendant City of Kincaid, Kansas acted under color of state law through its City Council, municipal officials, agents, employees, and final municipal policymakers.

**116.** Plaintiff does not allege that the City of Kincaid is liable merely because private persons committed violence.

Copyright 2023 – 2026 – John Walter Worthington

**117.** Plaintiff alleges that the City of Kincaid, through final municipal policymakers, affirmatively created, continued, ratified, and increased a danger by knowingly allowing Cricket's Bar & Grill to operate as an on-premise bar-style alcohol establishment despite lacking proper on-premise authority.

**118.** Plaintiff alleges that Cricket's Bar & Grill possessed only off-premise authority, or otherwise lacked proper on-premise authority, but knowingly served beer and/or cereal malt beverage for consumption on the premises.

**119.** Plaintiff alleges that the City of Kincaid City Council knew from the beginning that Cricket's Bar & Grill was serving beer and/or cereal malt beverage for on-premise consumption despite lacking proper on-premise authority.

**120.** The City's knowledge was actual or plainly obvious because the condition was open, visible, known within the community, and known to City officials and/or City Council members.

**121.** Despite that knowledge, the City allowed Cricket's Bar & Grill to continue operating in substance as an on-premise alcohol establishment.

**122.** The City failed to require correction of the licensing condition, failed to require proper on-premise authority, failed to suspend or revoke the improper operation, failed to condition continued operation, failed to refer or report the violation to appropriate authorities, and failed to abate the known danger.

**123.** Plaintiff alleges that these were not isolated mistakes or mere negligent omissions. They were municipal acts, ratification, deliberate tolerance, and conscious disregard by final municipal policymakers.

Copyright 2023 – 2026 – John Walter Worthington

**124.** The City's conduct created or increased the foreseeable danger of intoxication-related disorder, threats, fights, assaults, crowd escalation, public disorder, and injury to persons present at or near Cricket's Bar & Grill.

**125.** The risk was especially foreseeable during Kincaid Days, when public crowds, alcohol consumption, late-night activity, and public-safety concerns were heightened.

**126.** Plaintiff was a member of a limited and specifically definable group of persons exposed to the danger because Plaintiff was present at or near Cricket's Bar & Grill during the Kincaid Days events.

**127.** The risk to Plaintiff was serious, immediate, and proximate because the danger concerned a specific premises, a specific public event, a specific crowd environment, and an alcohol-related setting known to City policymakers.

**128.** During Kincaid Days, a large brawl occurred at or near Cricket's Bar & Grill.

**129.** Plaintiff was endangered, threatened, injured, damaged, or otherwise harmed as a direct and foreseeable result of the dangerous condition the City created, continued, increased, tolerated, and ratified.

**130.** The City's conduct shocks the conscience because final municipal policymakers allegedly knew that an improperly licensed alcohol premises was operating as a bar-style environment and allowed that condition to continue through a public event where the foreseeable risk of alcohol-related violence materialized.

**131.** The City's conduct violated Plaintiff's Fourteenth Amendment right to bodily integrity.

**132.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, loss of safety, loss of equal treatment, humiliation, out-of-pocket costs, records

Copyright 2023 – 2026 – John Walter Worthington

costs, medical or mental-health impacts, lost income or business damages, reputational harm, and other damages to be proven.

**133.** Plaintiff is entitled to compensatory damages, nominal damages, declaratory relief, injunctive relief where appropriate, costs, and all other relief allowed by law.

**COUNT 2 - 42 U.S.C. § 1983 — Monell Municipal Liability**
**Policy, Custom, Final Policymaker Decision, Ratification, and Deliberate Indifference**
**Against Defendant City of Kincaid, Kansas**

**134.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**135.** Defendant City of Kincaid, Kansas is a municipal entity subject to liability under 42 U.S.C. § 1983 where a constitutional violation is caused by official policy, custom, final-policymaker decision, ratification, or deliberate indifference.

**136.** Plaintiff does not seek to hold the City liable under a respondeat-superior theory.

**137.** Plaintiff alleges that the City of Kincaid City Council and/or other final municipal policymakers had final authority concerning municipal licensing, approval, renewal, verification, correction, reporting, and municipal response to Cricket's Bar & Grill's alcohol-related operations.

**138.** Plaintiff alleges that the City Council and final municipal policymakers knew Cricket's Bar & Grill was operating as an on-premise alcohol establishment despite possessing only off-premise authority or otherwise lacking proper on-premise authority.

**139.** Despite that knowledge, the City allowed Cricket's Bar & Grill to continue operating in that manner.

Copyright 2023 – 2026 – John Walter Worthington

**140.** The City's policy, custom, or practice included knowingly tolerating alcohol-premises operations outside the scope of proper authority, failing to correct known licensing violations, failing to condition or stop improper on-premise alcohol service, failing to refer or report known violations, and allowing the condition to continue during Kincaid Days.

**141.** The City's conduct was not a single random act by a low-level employee. Plaintiff alleges it was caused by the City's governing body, final policymakers, ratification, and deliberate indifference.

**142.** The City had actual or constructive notice that allowing an improperly licensed on-premise alcohol operation to continue created or increased foreseeable public-safety risks.

**143.** The known or obvious consequence of the City's conduct was that persons present at or near Cricket's Bar & Grill during public events would face increased risk of alcohol-related threats, fights, assaults, public disorder, and injury.

**144.** The City's policy, custom, final-policymaker decision, ratification, and deliberate indifference were the moving force behind the Fourteenth Amendment violation alleged in Count 1.

**145.** The causal chain includes:

a. Cricket's Bar & Grill possessed only off-premise authority, or otherwise lacked proper on-premise authority;

b. Cricket's Bar & Grill knowingly served beer and/or cereal malt beverage for on-premise consumption;

c. The City Council and final municipal policymakers knew of this condition;

Copyright 2023 – 2026 – John Walter Worthington

d. The City allowed the condition to continue;

e. The City's tolerance of the condition created or increased a foreseeable risk of alcohol-related violence;

f. Kincaid Days brought heightened crowd and public-safety risks to the same environment;

g. A large brawl occurred at or near Cricket's Bar & Grill; and

h. Plaintiff suffered harm as a direct and foreseeable result.

**146.** The City's policy, custom, final-policymaker decision, ratification, and deliberate indifference caused Plaintiff to suffer constitutional injury and damages.

**147.** Plaintiff is entitled to compensatory damages, nominal damages, declaratory relief, injunctive relief where appropriate, costs, and all other relief allowed by law.

**COUNT 3 - 42 U.S.C. § 1983 — Fourteenth Amendment State-Created Danger / Bodily Integrity**

**Direct On-Site Conduct, Supervisory Conduct, Ratification, and Deliberate Indifference**
**Against Defendants Vernon Valentine, Wesley E. McClain a/k/a Wes McClain, Deputy Thompson, and Unknown Officers 1–3**

**148.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Copyright 2023 – 2026 – John Walter Worthington

**149.** This count is brought under 42 U.S.C. § 1983 for violation of Plaintiff's substantive due-process right to bodily integrity under the Fourteenth Amendment.

**150.** Defendants Vernon Valentine, Wesley E. McClain a/k/a Wes McClain, Deputy Thompson, and Unknown Officers 1–3 acted under color of state law.

**151.** Plaintiff does not allege that Defendants are liable merely because private persons engaged in violence.

**152.** Plaintiff alleges that Defendants, through direct on-site conduct, supervisory conduct, policy participation, ratification, deliberate indifference, failure to correct known practices, and/or affirmative law-enforcement conduct, created or increased Plaintiff's vulnerability to private violence.

**153.** Deputy Thompson was on site during the Kincaid Days events.

**154.** Former Sheriff Vernon Valentine was also on site during the Kincaid Days events.

**155.** Defendant Wesley E. McClain a/k/a Wes McClain was not on site during the Kincaid Days brawl. Plaintiff includes McClain in this count only for his supervisory, operational, policy, ratification, deliberate-indifference, and failure-to-correct role as then-Undersheriff of Anderson County, Kansas.

**156.** Before the Kincaid Days brawl occurred, Plaintiff spoke with Deputy Thompson and warned him that, based on the way people were acting, Plaintiff believed the situation was escalating and violence was foreseeable.

**157.** Plaintiff's warning placed Deputy Thompson on actual notice of a specific, immediate, and escalating danger.

Copyright 2023 – 2026 – John Walter Worthington

**158.** Because Valentine was on site that night, Plaintiff alleges that Valentine also had actual or constructive notice of the crowd conditions, alcohol-premises environment, escalating risk, law-enforcement response posture, and foreseeable danger.

**159.** The warning and danger were not abstract or speculative. They concerned a specific public event, a specific crowd environment, a specific alcohol-premises setting, and a foreseeable risk of imminent violence.

**160.** Despite Plaintiff's warning and despite Valentine's and Thompson's presence on site, law-enforcement personnel failed to reasonably reduce the known danger, failed to adequately separate escalating persons, failed to control the scene, failed to document Plaintiff's warning, failed to increase law-enforcement response, failed to warn, failed to intervene meaningfully, and/or otherwise failed to prevent the known escalation.

**161.** Plaintiff alleges that the conduct of Valentine, Thompson, and Unknown Officers 1–3 did not merely amount to passive nonfeasance. Their actions and omissions affirmatively increased Plaintiff's vulnerability by allowing an identified danger to continue after actual warning, by failing to act in accordance with known danger, by mismanaging or minimizing the threat environment, and by treating Plaintiff's warning and protected reporting activity as a problem rather than as notice of danger.

**162.** Defendant Vernon Valentine, as then-Sheriff of Anderson County, Kansas and as an on-site law-enforcement actor that night, had direct, supervisory, operational, policy, training, discipline, reporting, evidence-preservation, and law-enforcement-practice responsibilities concerning sheriff-office responses to public-safety events, citizen reports, crowd disturbances, threats, violence, and deputy conduct.

**163.** Defendant Wesley E. McClain a/k/a Wes McClain, as then-Undersheriff of Anderson County, Kansas, had supervisory, operational, policy, training, discipline, reporting, evidence-preservation, and law-enforcement-practice responsibilities concerning sheriff-

Copyright 2023 – 2026 – John Walter Worthington

office responses to public-safety events, citizen reports, crowd disturbances, threats, violence, and deputy conduct.

**164.** Plaintiff does not sue Valentine or McClain merely because they held supervisory titles.

**165.** Plaintiff sues Valentine in this count because Valentine was allegedly on site that night, had authority as Sheriff, had actual or constructive notice of the dangerous environment, and failed to correct, control, document, supervise, intervene, or reduce the known danger.

**166.** Plaintiff sues McClain in this count because, although McClain was not on site that night, he allegedly participated in, ratified, tolerated, supervised, failed to correct, or was deliberately indifferent to recurring sheriff-office practices involving Plaintiff's reports, warnings, law-enforcement access, differential treatment, evidence preservation, response practices, and exposure to danger.

**167.** Valentine and McClain knew or should have known that sheriff-office personnel were failing to properly document, preserve, investigate, respond to, or act upon Plaintiff's reports and warnings.

**168.** Valentine and McClain knew or should have known that Plaintiff was being treated differently from similarly situated aggressors, threat-makers, brawlers, and other persons involved in related events.

**169.** Valentine and McClain knew or should have known that failure to correct these practices would create or increase Plaintiff's vulnerability to private violence and would chill Plaintiff's ability to seek law-enforcement protection and government redress.

**170.** Despite actual or constructive notice, Valentine and McClain failed to supervise, train, correct, discipline, investigate, preserve, or stop the unconstitutional practices alleged herein.

Copyright 2023 – 2026 – John Walter Worthington

**171.** Valentine and McClain ratified, tolerated, or deliberately disregarded sheriff-office practices that left Plaintiff exposed to known danger, treated Plaintiff as the problem for seeking assistance, and failed to provide equal and non-retaliatory handling of Plaintiff's reports and warnings.

**172.** The risk to Plaintiff was serious, immediate, and proximate because the danger involved a specific public event, a specific alcohol-related crowd environment, known escalating conduct, Plaintiff's actual warning to law enforcement before the brawl, and on-site presence by law-enforcement leadership.

**173.** Plaintiff was within a limited and specifically definable group of persons exposed to the danger because Plaintiff was present at or near the Kincaid Days / Cricket's Bar & Grill environment where the danger materialized.

**174.** Defendants knew or should have known that their conduct created or increased a foreseeable risk of private violence.

**175.** Defendants acted recklessly and in conscious disregard of the known or obvious risk.

**176.** A large brawl occurred at or near Cricket's Bar & Grill during Kincaid Days.

**177.** Plaintiff was endangered, threatened, injured, damaged, or otherwise harmed as a direct and foreseeable result of Defendants' conduct.

**178.** Defendants' conduct shocks the conscience because on-site law-enforcement actors and supervisors allegedly had notice of escalating danger, recurring reporting issues, and unconstitutional response practices, yet failed to correct those practices and allowed the danger to continue until the foreseeable risk materialized.

**179.** Defendants' conduct violated Plaintiff's Fourteenth Amendment right to bodily integrity.

Copyright 2023 – 2026 – John Walter Worthington

**180.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, loss of safety, loss of equal treatment, humiliation, out-of-pocket costs, records costs, medical or mental-health impacts, lost income or business damages, reputational harm, and other damages to be proven.

**181.** Plaintiff is entitled to compensatory damages, nominal damages, punitive damages against individual defendants where allowed by law, costs, and all other relief allowed by law.

**COUNT 4 - 42 U.S.C. § 1983 — Fourteenth Amendment Equal Protection / Selective Enforcement**

**Against Defendants Vernon Valentine, Wesley E. McClain a/k/a Wes McClain, Deputy Thompson, Unknown Officers 1–3, and Anderson County, Kansas**

**182.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**183.** This count is brought under 42 U.S.C. § 1983 for violation of Plaintiff's Fourteenth Amendment right to equal protection of the laws.

**184.** Defendants Vernon Valentine, Wesley E. McClain a/k/a Wes McClain, Deputy Thompson, and Unknown Officers 1–3 acted under color of state law.

**185.** Plaintiff alleges that Defendants treated Plaintiff differently from similarly situated persons involved in or connected to the same events, including aggressors, threat-makers, brawlers, witnesses, reporting parties, and persons involved in public-safety incidents in Anderson County.

Copyright 2023 – 2026 – John Walter Worthington

**186.** Plaintiff reported danger, warned law enforcement of escalating conditions, provided information, later provided a witness list, reported threats, sought assistance, requested records, and attempted to petition government for redress.

**187.** Plaintiff alleges that similarly situated aggressors, threat-makers, brawlers, or other persons involved in the same or related events were not treated with the same hostility, suspicion, discouragement, adverse response, lack of documentation, selective nonresponse, or adverse law-enforcement posture directed at Plaintiff.

**188.** Plaintiff alleges that Defendants failed to treat Plaintiff as a reporting victim, witness, complainant, or person seeking protection.

**189.** Instead, Plaintiff was treated as the problem because he repeatedly reported threats, violence, unsafe conditions, public-safety concerns, licensing-related danger, and law-enforcement failures.

**190.** Defendants' differential treatment lacked a rational basis and was motivated by hostility, animus, retaliation, deliberate indifference, or an established custom of treating Plaintiff differently because he repeatedly sought law-enforcement assistance and government redress.

**191.** Deputy Thompson had actual notice of Plaintiff's pre-brawl warning that the situation was escalating and that violence was foreseeable.

**192.** Former Sheriff Vernon Valentine was on site during the Kincaid Days events and had actual or constructive notice of the crowd conditions, alcohol-premises environment, law-enforcement response posture, and foreseeable danger.

Copyright 2023 – 2026 – John Walter Worthington

**193.** Plaintiff alleges that Deputy Thompson, Valentine, and Unknown Officers 1–3 failed to respond to Plaintiff's warning and reports in a manner comparable to how similarly situated persons would have been treated.

**194.** Plaintiff alleges that law-enforcement personnel failed to meaningfully document Plaintiff's warning, failed to preserve evidence, failed to treat Plaintiff's reports neutrally, failed to treat known aggressors comparably, and failed to respond in a non-discriminatory and non-retaliatory manner.

**195.** Plaintiff alleges that Wesley E. McClain a/k/a Wes McClain, although not on site during the Kincaid Days brawl, participated in, ratified, tolerated, supervised, failed to correct, or was deliberately indifferent to recurring sheriff-office practices involving Plaintiff's reports, warnings, law-enforcement access, differential treatment, evidence preservation, and response practices.

**196.** Plaintiff alleges that Anderson County is liable only to the extent the unequal treatment resulted from county policy, custom, practice, final-policymaker decision, ratification, failure to train, failure to supervise, or deliberate indifference.

**197.** Anderson County had actual or constructive notice of recurring differential treatment through Plaintiff's repeated reports, calls, warnings, requests for assistance, requests for records, complaints, witness information, dispatch records, CAD records, deputy contacts, and related incidents.

**198.** Anderson County's policy, custom, practice, final-policymaker decision, ratification, and deliberate indifference caused Plaintiff to be treated differently from similarly situated persons without a rational basis.

**199.** Defendants' conduct deprived Plaintiff of equal protection of the laws.

Copyright 2023 – 2026 – John Walter Worthington

**200.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, humiliation, loss of safety, loss of equal treatment, chilling of protected reporting activity, records costs, out-of-pocket expenses, reputational harm, medical or mental-health impacts, lost income or business damages, and other damages to be proven.

**201.** Plaintiff is entitled to compensatory damages, nominal damages, punitive damages against individual defendants where allowed by law, declaratory relief, injunctive relief where appropriate, costs, and all other relief allowed by law.

**COUNT 5 - 42 U.S.C. § 1983 — First Amendment Retaliation / Petition Clause Interference**

**Against Defendants Vernon Valentine, Wesley E. McClain a/k/a Wes McClain, Deputy Thompson, Unknown Officers 1–3, and Anderson County, Kansas**

**202.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**203.** This count is brought under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the First Amendment to the United States Constitution.

**204.** Plaintiff engaged in protected First Amendment activity by reporting threats, violence, unsafe conditions, public-safety concerns, suspected unlawful conduct, licensing-related danger, law-enforcement failures, and by requesting assistance, records, documentation, investigation, and government redress.

**205.** Plaintiff's reports, warnings, complaints, requests for records, requests for assistance, and attempts to obtain government action were protected speech and petitioning activity.

**206.** Defendants knew Plaintiff was engaging in protected activity.

Copyright 2023 – 2026 – John Walter Worthington

**207.** Plaintiff alleges that Defendants took adverse actions against him, chilled his protected activity, discouraged his reporting, mischaracterized his reports, failed to treat his reports neutrally, failed to document or preserve his reports and evidence, treated him as the problem for seeking help, and subjected him to unequal and retaliatory law-enforcement treatment.

**208.** Plaintiff alleges that Defendants' conduct would chill a person of ordinary firmness from continuing to report threats, request assistance, seek records, warn law enforcement of danger, and petition government for redress.

**209.** Plaintiff alleges that his protected activity was a substantial or motivating factor in Defendants' adverse treatment of him.

**210.** Deputy Thompson had actual notice that Plaintiff was reporting danger and warning law enforcement before the Kincaid Days brawl.

**211.** Former Sheriff Vernon Valentine was on site during the Kincaid Days events and had actual or constructive notice of Plaintiff's reporting activity, the crowd conditions, the law-enforcement response posture, and the foreseeable danger.

**212.** Plaintiff alleges that Deputy Thompson, Valentine, and Unknown Officers 1–3 treated Plaintiff's warning and reports as a problem rather than as protected reporting activity and notice of danger.

**213.** Plaintiff alleges that Defendants failed to respond to Plaintiff's reports and warnings in a neutral, non-retaliatory, and non-discriminatory manner.

**214.** Plaintiff alleges that Defendants failed to meaningfully document Plaintiff's warning, failed to preserve evidence, failed to treat Plaintiff as a reporting victim, witness, or complainant, and failed to treat known aggressors, threat-makers, or brawlers comparably.

Copyright 2023 – 2026 – John Walter Worthington

**215.** Plaintiff alleges that Wesley E. McClain a/k/a Wes McClain, although not on site during the Kincaid Days brawl, participated in, ratified, tolerated, supervised, failed to correct, or was deliberately indifferent to recurring sheriff-office practices that discouraged, chilled, mischaracterized, ignored, minimized, or retaliated against Plaintiff's protected reporting and petitioning activity.

**216.** Plaintiff alleges that Vernon Valentine and Wesley E. McClain knew or should have known that sheriff-office personnel were treating Plaintiff differently because of his repeated reports, calls, warnings, requests for assistance, requests for records, complaints, and attempts to petition government for redress.

**217.** Plaintiff alleges that Valentine and McClain failed to supervise, train, correct, discipline, investigate, preserve, or stop sheriff-office practices that chilled or retaliated against Plaintiff's protected activity.

**218.** Plaintiff alleges that Anderson County is liable only to the extent the First Amendment violation resulted from county policy, custom, practice, final-policymaker decision, ratification, failure to train, failure to supervise, or deliberate indifference.

**219.** Anderson County had actual or constructive notice of recurring retaliation-related and petition-interference issues through Plaintiff's repeated reports, calls, warnings, requests for assistance, requests for records, complaints, witness information, dispatch records, CAD records, deputy contacts, and related incidents.

**220.** Anderson County's policy, custom, practice, final-policymaker decision, ratification, failure to train, failure to supervise, and deliberate indifference caused Plaintiff's protected activity to be chilled, burdened, discouraged, or retaliated against.

Copyright 2023 – 2026 – John Walter Worthington

**221.** Defendants' conduct violated Plaintiff's First Amendment rights to speak, report public-safety concerns, request assistance, seek records, complain to government officials, and petition government for redress.

**222.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, humiliation, chilling of protected activity, loss of safety, loss of equal treatment, records costs, out-of-pocket expenses, reputational harm, medical or mental-health impacts, lost income or business damages, and other damages to be proven.

**223.** Plaintiff is entitled to compensatory damages, nominal damages, punitive damages against individual defendants where allowed by law, declaratory relief, injunctive relief where appropriate, costs, and all other relief allowed by law.

**COUNT 6 - 42 U.S.C. § 1983 — Individual Supervisory Liability, Personal Participation, Ratification, and Deliberate Indifference**

**Against Defendant Vernon Valentine, Individually**

**224.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**225.** This count is brought under 42 U.S.C. § 1983 against Defendant Vernon Valentine in his individual capacity.

**226.** At relevant times, Vernon Valentine served as Sheriff of Anderson County, Kansas.

**227.** Plaintiff does not sue Valentine merely because he held the title of Sheriff.

**228.** Plaintiff sues Valentine individually because of his own alleged conduct, personal participation, on-site presence, supervisory conduct, policy responsibility, ratification,

Copyright 2023 – 2026 – John Walter Worthington

deliberate indifference, failure to train, failure to supervise, failure to correct known unconstitutional practices, and final-policymaker involvement.

**229.** Valentine was on site during the Kincaid Days events.

**230.** Because Valentine was on site, Plaintiff alleges that Valentine had actual or constructive notice of the crowd conditions, alcohol-premises environment, escalating risk, law-enforcement response posture, and foreseeable danger.

**231.** Valentine had authority as Sheriff to direct, supervise, correct, control, document, preserve, intervene, or require appropriate law-enforcement response to the escalating danger.

**232.** Despite that authority and notice, Valentine failed to correct, control, document, supervise, intervene, preserve, investigate, or reduce the known danger.

**233.** Plaintiff alleges that Valentine knew or should have known that Plaintiff had reported danger, warned Deputy Thompson, sought assistance, and engaged in protected petitioning activity.

**234.** Plaintiff alleges that Valentine knew or should have known that sheriff-office personnel were failing to properly document, preserve, investigate, respond to, or act upon Plaintiff's reports and warnings.

**235.** Plaintiff alleges that Valentine knew or should have known that Plaintiff was being treated differently from similarly situated aggressors, threat-makers, brawlers, witnesses, complainants, reporting parties, and other persons involved in related public-safety incidents.

Copyright 2023 – 2026 – John Walter Worthington

**236.** Valentine failed to supervise, train, correct, discipline, investigate, preserve, or stop sheriff-office practices that treated Plaintiff as the problem for seeking law-enforcement assistance and government redress.

**237.** Valentine ratified, tolerated, approved, or deliberately disregarded sheriff-office practices that left Plaintiff exposed to known danger, discouraged Plaintiff's reporting, treated Plaintiff unequally, failed to preserve evidence, and failed to provide neutral, non-retaliatory handling of Plaintiff's reports and warnings.

**238.** Valentine's conduct was not mere negligence. Plaintiff alleges that Valentine acted with deliberate indifference and conscious disregard of known or obvious risks to Plaintiff's constitutional rights.

**239.** Valentine's conduct caused or contributed to the Fourteenth Amendment state-created-danger violation alleged in Count 3.

**240.** Valentine's conduct caused or contributed to the Fourteenth Amendment equal-protection / selective-enforcement violation alleged in Count 4.

**241.** Valentine's conduct caused or contributed to the First Amendment retaliation / petition-interference violation alleged in Count 5.

**242.** Valentine's conduct was a direct and proximate cause of Plaintiff's constitutional injuries.

**243.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, loss of safety, loss of equal treatment, humiliation, chilling of protected activity, out-of-pocket costs, records costs, medical or mental-health impacts, lost income or business damages, reputational harm, and other damages to be proven.

Copyright 2023 – 2026 – John Walter Worthington

**244.** Plaintiff is entitled to compensatory damages, nominal damages, punitive damages where allowed by law, costs, and all other relief allowed by law.

**245.** Plaintiff does not seek damages against Valentine based solely on respondeat superior, vicarious liability, or his former title as Sheriff.

**COUNT 7 - 42 U.S.C. § 1983 — Individual Supervisory Liability, Personal Participation, Ratification, and Deliberate Indifference**

**Against Defendant Wesley E. McClain a/k/a Wes McClain, Individually**

**246.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**247.** This count is brought under 42 U.S.C. § 1983 against Defendant Wesley E. McClain a/k/a Wes McClain in his individual capacity.

**248.** At relevant times, McClain served as Undersheriff of Anderson County, Kansas under then-Sheriff Vernon Valentine.

**249.** Plaintiff does not sue McClain merely because he held the title of Undersheriff.

**250.** Plaintiff does not allege that McClain was on site during the Kincaid Days brawl.

**251.** Plaintiff sues McClain individually because of his own alleged supervisory conduct, operational role, policy participation, ratification, deliberate indifference, failure to train, failure to supervise, failure to correct known unconstitutional practices, and personal involvement while serving as Undersheriff of Anderson County, Kansas.

Copyright 2023 – 2026 – John Walter Worthington

**252.** As Undersheriff, McClain had supervisory, operational, policy, training, discipline, reporting, evidence-preservation, and law-enforcement-practice responsibilities concerning sheriff-office responses to citizen reports, public-safety incidents, threats, violence, crowd disturbances, evidence preservation, dispatch coordination, and deputy conduct.

**253.** Plaintiff alleges that McClain knew or should have known of recurring problems involving Plaintiff's reports, warnings, law-enforcement access, differential treatment, evidence preservation, sheriff-office response practices, and retaliation-related practices.

**254.** Plaintiff alleges that McClain knew or should have known that sheriff-office personnel were failing to properly document, preserve, investigate, respond to, or act upon Plaintiff's reports and warnings.

**255.** Plaintiff alleges that McClain knew or should have known that Plaintiff was being treated differently from similarly situated aggressors, threat-makers, brawlers, witnesses, complainants, reporting parties, and other persons involved in related public-safety incidents.

**256.** Plaintiff alleges that McClain knew or should have known that sheriff-office personnel were discouraging, chilling, mischaracterizing, ignoring, minimizing, or retaliating against Plaintiff's protected reports, warnings, requests for assistance, requests for records, complaints, and petitioning activity.

**257.** Plaintiff alleges that McClain had authority, responsibility, or practical ability to supervise, train, correct, discipline, investigate, preserve evidence, require proper documentation, require neutral report handling, and stop recurring unconstitutional sheriff-office practices.

**258.** Despite actual or constructive notice, McClain failed to supervise, train, correct, discipline, investigate, preserve, or stop sheriff-office practices that treated Plaintiff as the problem for seeking law-enforcement assistance and government redress.

Copyright 2023 – 2026 – John Walter Worthington

**259.** McClain ratified, tolerated, approved, or deliberately disregarded sheriff-office practices that left Plaintiff exposed to known danger, discouraged Plaintiff's reporting, treated Plaintiff unequally, failed to preserve evidence, and failed to provide neutral, non-retaliatory handling of Plaintiff's reports and warnings.

**260.** McClain's conduct was not mere negligence. Plaintiff alleges that McClain acted with deliberate indifference and conscious disregard of known or obvious risks to Plaintiff's constitutional rights.

**261.** McClain's conduct caused or contributed to the Fourteenth Amendment state-created-danger violation alleged in Count 3.

**262.** McClain's conduct caused or contributed to the Fourteenth Amendment equal-protection / selective-enforcement violation alleged in Count 4.

**263.** McClain's conduct caused or contributed to the First Amendment retaliation / petition-interference violation alleged in Count 5.

**264.** McClain's conduct was a direct and proximate cause of Plaintiff's constitutional injuries.

**265.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, loss of safety, loss of equal treatment, humiliation, chilling of protected activity, out-of-pocket costs, records costs, medical or mental-health impacts, lost income or business damages, reputational harm, and other damages to be proven.

**266.** Plaintiff is entitled to compensatory damages, nominal damages, punitive damages where allowed by law, costs, and all other relief allowed by law.

Copyright 2023 – 2026 – John Walter Worthington

**267.** Plaintiff does not seek damages against McClain based solely on respondeat superior, vicarious liability, or his title as Undersheriff.

**COUNT 8 - 42 U.S.C. § 1983 — Monell Municipal Liability - Policy, Custom, Final Policymaker Decision, Ratification, Failure to Train, Failure to Supervise, and Deliberate Indifference**

**Against Defendant Anderson County, Kansas**

**268.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**269.** Defendant Anderson County, Kansas is a municipal entity subject to liability under 42 U.S.C. § 1983 where a constitutional violation is caused by official policy, custom, practice, final-policymaker decision, ratification, failure to train, failure to supervise, or deliberate indifference.

**270.** Plaintiff does not seek to hold Anderson County liable under a respondeat-superior theory.

**271.** Plaintiff alleges that Anderson County, through its Sheriff's Office, sheriff-office leadership, final policymakers, supervisors, deputies, dispatch-related practices, records practices, evidence-preservation practices, and law-enforcement customs, caused or contributed to the constitutional violations alleged in this Complaint.

**272.** At relevant times, former Sheriff Vernon Valentine served as Sheriff of Anderson County, Kansas and had final policymaking authority concerning sheriff-office law-enforcement practices, deputy supervision, training, discipline, report handling, evidence preservation, dispatch coordination, public-safety response, and response to citizen reports.

Copyright 2023 – 2026 – John Walter Worthington

**273.** At relevant times, Wesley E. McClain a/k/a Wes McClain served as Undersheriff of Anderson County, Kansas and participated in sheriff-office supervision, operations, policy implementation, training, discipline, reporting practices, evidence-preservation practices, and response practices.

**274.** Plaintiff alleges that Anderson County maintained policies, customs, or practices of failing to properly receive, document, investigate, preserve, and respond to Plaintiff's reports, warnings, requests for assistance, public-safety concerns, and protected petitioning activity.

**275.** Plaintiff alleges that Anderson County maintained policies, customs, or practices of treating Plaintiff differently from similarly situated aggressors, threat-makers, brawlers, witnesses, complainants, reporting parties, and persons involved in public-safety incidents.

**276.** Plaintiff alleges that Anderson County maintained policies, customs, or practices of discouraging, chilling, mischaracterizing, minimizing, ignoring, or retaliating against Plaintiff's protected reports, warnings, requests for assistance, requests for records, complaints, and petitioning activity.

**277.** Plaintiff alleges that Anderson County maintained policies, customs, or practices of failing to preserve dispatch records, CAD records, body-camera recordings, dash-camera recordings, witness information, deputy observations, reports, and other evidence relevant to Plaintiff's reports and the Kincaid Days brawl.

**278.** Plaintiff alleges that Anderson County maintained policies, customs, or practices of failing to train and supervise deputies and sheriff-office personnel on neutral report handling, equal treatment of complainants, non-retaliatory treatment of reporting parties, evidence preservation, documentation of warnings, public-safety response, and lawful treatment of persons petitioning government for assistance.

Copyright 2023 – 2026 – John Walter Worthington

**279.** Plaintiff alleges that Anderson County had actual or constructive notice of these recurring problems through Plaintiff's repeated reports, calls, warnings, requests for assistance, requests for records, complaints, witness information, deputy contacts, dispatch records, CAD records, related incidents, and the involvement of sheriff-office leadership.

**280.** Anderson County's policymakers knew or should have known that failing to correct these practices would create or increase the risk that Plaintiff would be exposed to private violence, treated unequally, chilled from petitioning government, denied neutral report handling, and deprived of evidence necessary to protect his rights.

**281.** Despite actual or constructive notice, Anderson County failed to correct, train, supervise, discipline, investigate, preserve, or stop the unconstitutional practices alleged herein.

**282.** Anderson County ratified, tolerated, approved, or deliberately disregarded sheriff-office practices that left Plaintiff exposed to known danger, treated Plaintiff as the problem for seeking assistance, discouraged Plaintiff's reporting, treated Plaintiff unequally, failed to preserve evidence, and failed to provide neutral, non-retaliatory handling of Plaintiff's reports and warnings.

**283.** Anderson County's policy, custom, practice, final-policymaker decision, ratification, failure to train, failure to supervise, and deliberate indifference were the moving force behind the Fourteenth Amendment state-created-danger violation alleged in Count 3.

**284.** Anderson County's policy, custom, practice, final-policymaker decision, ratification, failure to train, failure to supervise, and deliberate indifference were the moving force behind the Fourteenth Amendment equal-protection / selective-enforcement violation alleged in Count 4.

Copyright 2023 – 2026 – John Walter Worthington

**285.** Anderson County's policy, custom, practice, final-policymaker decision, ratification, failure to train, failure to supervise, and deliberate indifference were the moving force behind the First Amendment retaliation / petition-interference violation alleged in Count 5.

**286.** The causal chain includes:

a. Plaintiff repeatedly reported threats, danger, unsafe conditions, public-safety concerns, and law-enforcement failures;

b. Plaintiff warned Deputy Thompson before the Kincaid Days brawl that the situation was escalating and violence was foreseeable;

c. Former Sheriff Vernon Valentine was on site during the Kincaid Days events;

d. Anderson County law-enforcement personnel failed to meaningfully document, preserve, investigate, or respond to Plaintiff's warning and reports;

e. Anderson County law-enforcement personnel treated Plaintiff differently from similarly situated aggressors, threat-makers, brawlers, witnesses, complainants, and reporting parties;

f. Anderson County law-enforcement personnel discouraged, chilled, mischaracterized, minimized, ignored, or retaliated against Plaintiff's protected petitioning activity;

g. Anderson County policymakers and supervisors failed to correct, train, supervise, discipline, investigate, preserve, or stop the recurring practices; and

h. Plaintiff suffered constitutional injury and damages as a direct and foreseeable result.

Copyright 2023 – 2026 – John Walter Worthington

**287.** Anderson County's conduct was not mere negligence. Plaintiff alleges that Anderson County acted through policy, custom, final-policymaker conduct, ratification, failure to train, failure to supervise, and deliberate indifference.

**288.** Anderson County's conduct caused or contributed to Plaintiff's constitutional injuries.

**289.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, loss of safety, loss of equal treatment, humiliation, chilling of protected activity, out-of-pocket costs, records costs, medical or mental-health impacts, lost income or business damages, reputational harm, and other damages to be proven.

**290.** Plaintiff is entitled to compensatory damages, nominal damages, declaratory relief, injunctive relief where appropriate, costs, and all other relief allowed by law.

**COUNT 9 - Prospective Declaratory and Injunctive Relief**

**Against Defendant Wesley E. McClain a/k/a Wes McClain, in His Official Capacity as Current Sheriff of Anderson County, Kansas**

**291.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**292.** This count is brought against Defendant Wesley E. McClain a/k/a Wes McClain in his official capacity as the current Sheriff of Anderson County, Kansas for prospective declaratory and injunctive relief only.

**293.** Plaintiff does not seek damages against McClain in his official capacity.

Copyright 2023 – 2026 – John Walter Worthington

**294.** Plaintiff alleges that ongoing or recurring sheriff-office policies, customs, practices, reporting restrictions, dispatch practices, evidence-preservation practices, retaliation-related practices, selective-enforcement practices, and access-to-law-enforcement issues create a continuing risk of future constitutional injury.

**295.** Plaintiff alleges that he has a continuing need to report emergencies, threats, crimes, public-safety issues, victim reports, witness information, records issues, and evidence-preservation concerns without being subjected to retaliation, unequal treatment, chilling, mischaracterization, or denial of neutral access to law-enforcement channels.

**296.** Plaintiff alleges that the Anderson County Sheriff's Office has ongoing authority over sheriff-office personnel, dispatch-related practices, law-enforcement response practices, report-handling practices, evidence-preservation practices, and policies affecting Plaintiff's ability to seek emergency and non-emergency assistance.

**297.** Plaintiff seeks prospective relief requiring the Sheriff's Office to refrain from retaliating against Plaintiff for protected reports, warnings, records requests, complaints, or petitioning activity.

**298.** Plaintiff seeks prospective relief requiring the Sheriff's Office to refrain from treating Plaintiff differently from similarly situated reporting parties, witnesses, complainants, victims, or persons seeking law-enforcement assistance without a lawful basis.

**299.** Plaintiff seeks prospective relief requiring the Sheriff's Office to maintain neutral, non-retaliatory channels for Plaintiff to report true emergencies, threats, crimes in progress, victim reports, witness information, public-safety concerns, and non-emergency matters.

**300.** Plaintiff seeks prospective relief requiring the Sheriff's Office to preserve relevant dispatch records, CAD records, reports, body-camera recordings, dash-camera recordings, witness information, communications, and other records concerning Plaintiff's reports,

Copyright 2023 – 2026 – John Walter Worthington

warnings, complaints, requests for assistance, and related incidents, to the extent required by law, policy, litigation holds, preservation duties, or court order.

**301.** Plaintiff seeks prospective relief requiring the Sheriff's Office to refrain from using informal reporting restrictions, selective nonresponse, retaliatory treatment, or mischaracterization of Plaintiff's reports to chill Plaintiff's lawful access to government.

**302.** Plaintiff does not seek an order requiring the Sheriff's Office to arrest any particular person, charge any particular person, investigate in any particular way, or surrender ordinary law-enforcement discretion.

**303.** Plaintiff seeks narrowly tailored relief to prevent retaliation, unequal treatment, chilling of protected reporting activity, improper reporting restrictions, and recurrence of the unconstitutional policies and practices alleged in this Complaint.

**304.** Plaintiff alleges that prospective relief is necessary because damages alone will not prevent ongoing or recurring violations involving access to law enforcement, report handling, retaliation, selective treatment, and evidence preservation.

**305.** Plaintiff is entitled to declaratory relief, injunctive relief, costs, and all other prospective relief allowed by law.

COUNT 10 - Kansas Common-Law Fraud / Fraudulent Misrepresentation / Fraud by Silence Against Defendant Cricket's Bar & Grill, Legal Owner/Operator Presently Unknown, and Responsible Private Defendants

**306.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

Copyright 2023 – 2026 – John Walter Worthington

**307.** This count is brought as a supplemental Kansas state-law claim against Cricket's Bar & Grill, its presently unknown legal owner, operator, manager, license holder, corporate entity, registered agent, and other responsible private defendants.

**308.** Plaintiff alleges that Cricket's Bar & Grill and its responsible private defendants knowingly operated, held out, presented, or allowed Cricket's Bar & Grill to appear as a lawful on-premise bar-style establishment.

**309.** Plaintiff alleges that Cricket's Bar & Grill and its responsible private defendants knew that Cricket's Bar & Grill was not lawfully authorized to serve alcohol on tap, draught beer, beer, cereal malt beverage, or alcoholic beverages for on-premise consumption without the proper on-premise license or other legally required authority.

**310.** Plaintiff alleges that Cricket's Bar & Grill nevertheless served alcohol on tap, draught beer, beer, cereal malt beverage, or alcoholic beverages for consumption on the premises.

**311.** Plaintiff alleges that Cricket's Bar & Grill and its responsible private defendants knew, or recklessly disregarded, that the premises possessed only off-premise authority, or otherwise lacked proper on-premise authority, for the alcohol-related operations occurring at the premises.

**312.** The licensing status and lawful authority of Cricket's Bar & Grill were material facts because those facts affected the legality of the premises, the nature of the premises, the risk environment, the crowd conditions, the safety conditions, the public-event environment, and Plaintiff's decision to enter, remain near, participate in, or otherwise be present in connection with the Kincaid Days / Cricket's Bar & Grill environment.

**313.** Plaintiff alleges that Cricket's Bar & Grill and its responsible private defendants intentionally or recklessly concealed, failed to disclose, or misrepresented the material fact

Copyright 2023 – 2026 – John Walter Worthington

that Cricket's Bar & Grill lacked proper authority to serve alcohol on tap or otherwise operate as an on-premise bar-style establishment.

**314.** Plaintiff alleges that Cricket's Bar & Grill and its responsible private defendants had superior knowledge of their own licensing status, alcohol authority, business operations, on-premise service practices, tap-service practices, and legal ability or inability to allow on-premise alcohol consumption.

**315.** Plaintiff alleges that the open and visible operation of Cricket's Bar & Grill as a bar-style premises serving alcohol on tap created the false appearance that the premises was lawfully authorized to operate in that manner.

**316.** Plaintiff alleges that Cricket's Bar & Grill and its responsible private defendants intended patrons, visitors, event participants, and persons present at or near the premises, including Plaintiff, to rely on the appearance, representation, concealment, or omission that Cricket's Bar & Grill was lawfully operating in the manner in which it was operating.

**317.** Plaintiff alleges that he did not know, at the relevant time, that Cricket's Bar & Grill lacked proper authority to serve alcohol on tap or operate as an on-premise alcohol establishment.

**318.** Plaintiff alleges that his reliance was reasonable because the on-premise alcohol service was open, visible, known in the community, and allegedly tolerated by municipal officials, giving the appearance that the premises was lawfully operating in that manner.

**319.** Plaintiff alleges that had he known Cricket's Bar & Grill lacked proper authority to serve alcohol on tap or operate as an on-premise alcohol establishment, Plaintiff would have acted differently, including by avoiding the premises, avoiding the event environment, making different safety decisions, or taking additional steps to protect himself.

Copyright 2023 – 2026 – John Walter Worthington

**320.** Plaintiff alleges that Cricket's Bar & Grill's misrepresentation, concealment, or failure to disclose contributed to Plaintiff's exposure to an unlawful or unsafe alcohol-premises environment.

**321.** Plaintiff alleges that the danger was foreseeable because operating as an on-premise alcohol establishment without proper authority increased the risk of intoxication-related disturbances, threats, fights, assaults, crowd escalation, public disorder, and injury to persons present at or near the premises.

**322.** During Kincaid Days, a large brawl occurred at or near Cricket's Bar & Grill.

**323.** Plaintiff was endangered, threatened, injured, damaged, or otherwise harmed in connection with the Kincaid Days / Cricket's Bar & Grill environment.

**324.** Plaintiff alleges that Cricket's Bar & Grill's conduct was intentional, reckless, willful, wanton, fraudulent, or in conscious disregard of Plaintiff's rights and safety.

**325.** As a direct and proximate result, Plaintiff suffered damages including fear, emotional distress, loss of safety, humiliation, out-of-pocket costs, records costs, medical or mental-health impacts, lost income or business damages, reputational harm, and other damages to be proven.

**326.** Plaintiff seeks compensatory damages, punitive damages where allowed by law, costs, interest where allowed, and all other relief allowed by law.

**327.** Plaintiff brings this claim against private defendants only as a supplemental state-law claim arising from the same events, premises, licensing condition, Kincaid Days brawl, injuries, damages, and common nucleus of operative fact alleged in this Complaint.

Copyright 2023 – 2026 – John Walter Worthington

**328.** Plaintiff reserves the right to amend this count when the true legal name of Cricket's Bar & Grill, its owner, operator, license holder, manager, corporate entity, registered agent, or other responsible person or entity is learned through Kansas ABC records, City records, Secretary of State records, KORA responses, subpoenas, disclosures, or discovery.

**EVIDENCE PRESERVATION, SPOLIATION, AND EVIDENTIARY REMEDIES**

**329.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**330.** Plaintiff alleges that relevant evidence exists or existed concerning the Kincaid Days brawl, Cricket's Bar & Grill, Anderson County law-enforcement response, Plaintiff's warning to Deputy Thompson, former Sheriff Vernon Valentine's on-site presence, reports made after the brawl, Ronnie Quick's threat, witness information, dispatch activity, CAD activity, law-enforcement documentation, body-camera recordings, dash-camera recordings, photographs, communications, and records concerning Plaintiff's protected reporting and petitioning activity.

**331.** Relevant evidence includes, but is not limited to, dispatch recordings, CAD logs, call-for-service records, incident reports, supplemental reports, deputy notes, body-camera recordings, dash-camera recordings, radio traffic, text messages, emails, witness lists, witness statements, photographs, video recordings, public-event records, licensing records, City Council records, Kansas ABC records, Cricket's Bar & Grill records, and communications between or among governmental actors and private actors.

**332.** Plaintiff alleges that the City of Kincaid, Anderson County, sheriff-office personnel, individual governmental defendants, and private defendants knew or should have known that the evidence described in this Complaint was relevant to actual or reasonably foreseeable

Copyright 2023 – 2026 – John Walter Worthington

litigation, government claims, public-records requests, constitutional claims, preservation duties, and Plaintiff's efforts to seek redress.

**333.** Plaintiff alleges that Defendants had a duty to preserve relevant evidence once they knew or reasonably should have known that the evidence was relevant to Plaintiff's reports, warnings, injuries, complaints, public-records requests, legal claims, or reasonably foreseeable litigation.

**334.** Plaintiff alleges that Anderson County and sheriff-office personnel had possession, custody, control, access, or practical ability to preserve law-enforcement records, dispatch records, CAD records, recordings, body-camera recordings, dash-camera recordings, reports, witness information, deputy observations, and related communications.

**335.** Plaintiff alleges that the City of Kincaid had possession, custody, control, access, or practical ability to preserve municipal records, City Council records, licensing-related records, communications, public-event records, records concerning Cricket's Bar & Grill, and records concerning municipal knowledge, approval, tolerance, ratification, or response.

**336.** Plaintiff alleges that Cricket's Bar & Grill, its owner, operator, license holder, manager, corporate entity, registered agent, or responsible person/entity had possession, custody, control, access, or practical ability to preserve business records, licensing records, sales records, communications, surveillance footage, photographs, witness information, and premises-related evidence.

**337.** Plaintiff alleges that relevant evidence may have been lost, withheld, destroyed, overwritten, failed to be created, failed to be preserved, mischaracterized, or otherwise made unavailable.

**338.** Plaintiff does not ask the Court at this pleading stage to presume spoliation without evidence. Plaintiff pleads this section to preserve the issue, identify categories of relevant

Copyright 2023 – 2026 – John Walter Worthington

evidence, provide notice of preservation concerns, and request appropriate relief if discovery shows that relevant evidence was lost, destroyed, withheld, overwritten, altered, or not preserved after a duty to preserve arose.

**339.** To the extent electronically stored information was lost after a duty to preserve arose, Plaintiff reserves the right to seek relief under Federal Rule of Civil Procedure 37(e), including measures no greater than necessary to cure prejudice and, where supported by evidence of intent to deprive, additional remedies allowed by law.

**340.** To the extent non-electronic evidence was lost, destroyed, withheld, altered, or not preserved after a duty to preserve arose, Plaintiff reserves the right to seek appropriate evidentiary remedies, discovery remedies, adverse-inference relief where allowed, sanctions where supported, cost-shifting, discovery orders, preservation orders, or other relief allowed by law.

**341.** Plaintiff requests that Defendants preserve all records, communications, recordings, electronically stored information, documents, photographs, videos, metadata, audit logs, retention logs, deletion logs, and other evidence concerning the allegations in this Complaint.

**342.** Plaintiff requests that Defendants preserve all evidence concerning Plaintiff's reports, warnings, requests for assistance, requests for records, complaints, petitioning activity, treatment by law enforcement, alleged differential treatment, alleged retaliation, and any restrictions or practices affecting Plaintiff's access to emergency or non-emergency law-enforcement channels.

**343.** Plaintiff requests that Defendants preserve all evidence concerning similarly situated aggressors, threat-makers, brawlers, witnesses, complainants, reporting parties, and persons involved in related public-safety incidents.

**344.** Plaintiff requests that Defendants preserve all evidence concerning training, supervision, policies, customs, practices, discipline, investigations, report handling, dispatch

Copyright 2023 – 2026 – John Walter Worthington

coordination, records retention, evidence preservation, body-camera use, dash-camera use, and communications relevant to the claims alleged in this Complaint.

**345.** Plaintiff requests that Defendants preserve all evidence concerning Cricket's Bar & Grill's licensing status, on-premise service, off-premise authority, City of Kincaid knowledge, City Council knowledge, municipal approval, municipal tolerance, municipal ratification, public-event conditions, and the Kincaid Days brawl.

**346.** Plaintiff reserves the right to seek targeted preservation orders, expedited preservation discovery, subpoenas, inspection, forensic review, evidentiary remedies, sanctions, or other relief if facts show that relevant evidence was lost, destroyed, altered, withheld, overwritten, or not preserved.

**347.** This section is not pled as a standalone cause of action. It is pled to preserve evidence issues, give notice of relevant categories of evidence, support discovery, support future evidentiary motions if warranted, and protect Plaintiff's ability to prove the claims alleged in this Complaint.

**DAMAGES**

**348.** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

**349.** As a direct and proximate result of Defendants' conduct, Plaintiff suffered constitutional injuries, including deprivation of bodily integrity, loss of equal protection, retaliation for protected activity, chilling of petitioning activity, loss of lawful access to neutral law-enforcement channels, loss of safety, humiliation, fear, emotional distress, and other injuries to be proven.

Copyright 2023 – 2026 – John Walter Worthington

**350.** Plaintiff suffered fear, anxiety, distress, humiliation, loss of peace of mind, loss of security, and emotional harm arising from the Kincaid Days brawl, the alleged failure to respond to Plaintiff's warning, the alleged unequal treatment of Plaintiff's reports, and the alleged retaliation or chilling of Plaintiff's protected reporting activity.

**351.** Plaintiff suffered damages arising from being treated as the problem after reporting danger, warning law enforcement, requesting assistance, seeking records, providing witness information, and attempting to petition government for redress.

**352.** Plaintiff suffered damages arising from the alleged failure to properly document, preserve, investigate, and respond to his reports, warnings, witness information, public-safety concerns, and related evidence.

**353.** Plaintiff suffered damages arising from loss of evidence, loss of documentation, loss of neutral report handling, records costs, out-of-pocket expenses, time spent attempting to obtain records, time spent attempting to identify responsible parties, and time spent attempting to protect his legal rights.

**354.** Plaintiff suffered medical, mental-health, emotional, reputational, personal, economic, business, and out-of-pocket damages in amounts to be proven.

**355.** Plaintiff seeks compensatory damages for emotional distress, fear, humiliation, loss of safety, loss of equal treatment, chilling of protected activity, out-of-pocket losses, records costs, medical or mental-health impacts, lost income or business damages, reputational harm, and all other compensatory damages allowed by law.

**356.** Plaintiff seeks nominal damages for each proven constitutional violation even if actual damages are difficult to quantify.

Copyright 2023 – 2026 – John Walter Worthington

**357.** Plaintiff seeks punitive damages against individual defendants in their individual capacities where permitted by law and where the evidence shows reckless or callous indifference to Plaintiff's federally protected rights.

**358.** Plaintiff does not seek punitive damages against municipal defendants unless permitted by law.

**359.** Plaintiff seeks declaratory relief concerning Defendants' alleged violation of Plaintiff's federal constitutional rights.

**360.** Plaintiff seeks prospective injunctive relief where appropriate to prevent ongoing or recurring retaliation, unequal treatment, chilling of protected reporting activity, improper reporting restrictions, evidence loss, and denial of neutral access to lawful emergency and non-emergency law-enforcement channels.

**361.** Plaintiff seeks costs, reasonable litigation expenses where allowed, and any attorney's fees available if counsel appears or if otherwise permitted by law.

**362.** Plaintiff seeks pre-judgment interest and post-judgment interest where allowed by law.

**363.** Plaintiff seeks all other legal, equitable, declaratory, nominal, compensatory, punitive, prospective, and remedial relief the Court or jury deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Walter Worthington respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

**A.** Declare that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution as alleged in this Complaint;

Copyright 2023 – 2026 – John Walter Worthington

**B.** Award compensatory damages against Defendants in amounts to be determined by the jury or Court;

**C.** Award nominal damages for each proven constitutional violation;

**D.** Award punitive damages against the individual-capacity defendants where permitted by law and where supported by the evidence;

**E.** Award prospective declaratory and injunctive relief against Defendant Wesley E. McClain a/k/a Wes McClain in his official capacity as current Sheriff of Anderson County, Kansas, as necessary to prevent ongoing or recurring retaliation, unequal treatment, improper reporting restrictions, chilling of protected petitioning activity, denial of neutral access to lawful emergency and non-emergency reporting channels, and evidence-preservation failures;

**F.** Enter appropriate preservation orders, discovery orders, evidentiary remedies, or sanctions if discovery shows that relevant evidence was lost, destroyed, altered, withheld, overwritten, or not preserved after a duty to preserve arose;

**G.** Award costs, reasonable litigation expenses where allowed, and attorney's fees if counsel appears or if otherwise permitted by law;

**H.** Award pre-judgment and post-judgment interest where allowed by law; and

**I.** Award all other legal, equitable, declaratory, nominal, compensatory, punitive, prospective, remedial, and further relief the Court or jury deems just and proper.

Copyright 2023 – 2026 – John Walter Worthington

**DATED**: April 25, 2026

Respectfully submitted,

/s/ John Walter Worthington

John Walter Worthington, Pro Se

**Mailing Address:**

Alternative address;

255 N. Michigan #9

Lawrence, KS 66044

785-221-0806